## FREDERICK MEAD *vs.* HUGH STIRLING.

The plaintiff was Worshipful Master of a local masonic lodge, and was summoned before the Grand Master of the state lodge, to which the local lodge belonged, to show reason why he should not be suspended from his office, which was not one of profit, for alleged misconduct, and brought a suit in a state court for an injunction against such action of the Grand Master. By the rules of the order, if suspended, he had a right of appeal to the state lodge. Held that a suit in a state court would not be entertained until he had pursued all the remedies provided by the rules of the order.

And that it was not a sufficient reason for entertaining the suit that the Grand Master was himself in the first instance both complainant and judge, and would preside over the state lodge on an appeal taken to it from his decision.

Nor the fact that a reversal of the Grand Master's decision by the state lodge could not, owing to lapse of time, restore him to his office, the office not being one of profit.

The rule that remedies within the order must first be exhausted where property rights are not involved is universally accepted. How it would be where property rights are involved: *Quære.*

Injunctions will not be granted where the wrongful acts sought to be enjoined affect reputation merely.

An allegation of "irreparable injury" is not sufficient without a statement of the facts which constitute it.

IN the Court of Common Pleas of Fairfield County, November Term, 1892. Suit for an injunction.

*L. Warner* and *J. B. Hurlbutt,* for the plaintiff.

*M. W. Seymour* and *G. W. Wheeler,* for the defendant.

PERRY, J. The complaint herein alleges in substance that the plaintiff is "Worshipful Master" and presiding officer of a local lodge of Ancient Free and Accepted Masons, to which office he was elected on an undesignated day in December, 1891, for the term of one year thereafter and until his successor should be chosen.

That said office is one "of honor and position in the lodge and in the order generally outside of the lodge."

That the defendant is "Grand Master of the Grand Lodge

Mead v. Stirling.

of Masons of Connecticut" within the jurisdiction of which said local lodge is.

That the plaintiff at a "communication of his lodge truthfully and fairly stated to its members the substance of a certain important conversation relative to their order which he had theretofore held with the defendant, and received and submitted for their consideration, as he believed he was bound to do, certain resolutions with preambles, which were thereupon offered.

That on the day of the date of the complaint between the hours of eleven and twelve o'clock in the forenoon the plaintiff received a summons from the defendant, acting as Grand Master, to appear before him on the next day at ten o'clock in the forenoon, to show cause why he should not be suspended from his said office "for having made the statement and receiving said resolutions; charging said statement to be a willful misrepresentation of said conversation."

That the defendant proposes to himself determine the question of veracity between them and "to judge the plaintiff upon such finding and suspend him from his said office—in other words to act as judge in his own cause, and further the carrying out" of an ulterior point which he had in view.

That in making the statement complained of the plaintiff violated no masonic obligation or pledge or any rule of gentlemanly and proper conduct or intercourse.

That the defendant has no authority by any masonic law, constitution or by-law of the Grand Lodge to try and depose the plaintiff from his office of honor and trust.

That by masonic rules and law the plaintiff is entitled to a trial before an unbiased tribunal of his peers upon testimony of competent witnesses and upon charges properly preferred.

That no charges have been preferred against the plaintiff or served upon him as masonic law and rules require.

That until charges have been preferred the defendant, neither as Grand Master nor in any other capacity, has ju-

risdiction or authority to suspend the plaintiff as he threatens to do.

That the plaintiff has no remedy except by injunction from a court of equity.

That the only redress which the plaintiff would have from a decision of the defendant acting in his capacity of Grand Master, would be by an appeal, through him, to the Grand Lodge of Connecticut, over which he presides; which "would not, by reason of the bias and determined disposition of the defendant to accomplish his purpose, have before it, to give the plaintiff that fair position before his fellows in his order that he is entitled to, the full question and attendant circumstances which the Grand Master and himself propose to try, but simply the decision of the Grand Master."

That the Grand Lodge does not meet until January, 1893, after the plaintiff's term of office has expired, "so that no order of reinstatement upon an overruling of the decision of the Grand Master can be made or adequate relief to the plaintiff be granted."

And the apprehended damage is then stated as follows:—

" That an order of suspension of the plaintiff by the defendant would disgrace the plaintiff in the opinion of all regular masons, work him an irreparable injury to his reputation, character and business, and be published in masonic circles, and otherwise most extensively circulated, injuring his financial credit, and be an impeachment of his veracity."

An injunction is claimed restraining the defendant from hearing and determining as to the guilt of the plaintiff and from suspending him from his said office.

It will be observed that no specific allegation is made that a Grand Master has jurisdiction to suspend a Worshipful Master. On the contrary the opposite would seem to be really claimed in the complaint. But the case was argued by both parties upon the assumption that such jurisdiction in fact existed and as if it had been so alleged. The questions raised herein will therefore be considered as if it affirmatively appeared that the defendant had jurisdiction over the

subject matter in dispute, or, in other words, that he had authority to suspend the plaintiff for a sufficient cause properly proved. If the defendant had no jurisdiction in the premises *in any event*, then of course an injunction would be plainly unnecessary and should not be granted.

To this complaint the defendant demurs, virtually on three grounds.

1st. Because the plaintiff and defendant are bound to conform to the constitution, laws and regulations of the order to which they both belong, and the remedies thereby afforded, as indicated in the complaint, must first be exhausted before recourse can be had to this tribunal.

2d. Because no property rights of the plaintiff are alleged to be threatened by the defendant, and, this being so, the first ground of demurrer is certainly valid even if invalid otherwise.

3d. Because no facts showing such irreparable damage as would warrant an injunction are set forth in the complaint.

Although the instances in which the civil courts can be called upon to afford relief where property rights are not threatened must be rare indeed, still it seems to be well settled that, if any such in fact exist, the remedies within the order must first have been exhausted before other relief can be obtained. Accordingly, inasmuch as the plaintiff expects to be deprived merely of " an office of honor and position " in his order, with which no pecuniary emoluments or property benefits are alleged to be connected, the first ground of demurrer might well be disregarded and the second considered in its place. But a few cases decided by tribunals in high repute hold that the same is true even where property rights are involved, and that therefore the first ground of demurrer is well taken 'also. If the first be sound the second certainly must be, and therefore those cases will be briefly considered. ·

Bacon, in his work on Benefit Societies & Life Insurance, sec. 104, top of page 127, says :—" There is a great array of judicial authority in favor of the proposition that, where members are expelled from religious societies, social clubs,

benevolent societies, and other voluntary organizations incorporated or unincorporated, the judicial courts will not interfere to reinstate them or to revise the judgment of expulsion until the expelled member has exhausted all the remedies available to him within the organization itself, by appealing to a higher judicatory provided by the rules of the society or otherwise."

The same rule would of course apply with far greater force to a case of threatened suspension from a mere office in the order, and therefore authorities sustaining the proposition just quoted will control the case at bar.

In the case of *Lafond* v. *Deems*, 81 N. York, 507, (1880,) it was sought to dissolve a voluntary charitable association and divide its assets on the ground that the misconduct of its members and their mutual bitterness of feeling and irreconcilable hostility made a winding up of its affairs and division of its assets necessary. The rules of the order provided for the trial of its members for misconduct, and in that connection for appeals from one tribunal to another within the order. These remedies had not been tried. The court denied the application and said :—" As the members who are claimed by the plaintiffs to have been chargeable with a violation of the rules of the association were not called upon to answer so as to correct the evils complained of, and as the power to remedy the same was ample and complete, the plaintiffs are not in a position to seek the interposition of a court of equity. * * * Courts should not as a general rule interfere with the contentions and quarrels of voluntary associations so long as the government is fairly and honestly administered, and those who have grievances should be required in the first instance to resort to the remedies for redress provided by their rules and regulations. This had not been done in the case considered, and under such circumstances no action lies. None of the authorities cited by the plaintiff's counsel sustain the position that the remedy is at law or in equity unless there is well grounded cause for complaint ; and *even then* an opportunity should be given to

correct the cause of complaint within the organization where it can be properly done."

I understand this to mean that, even if there is "well grounded cause for complaint" on account of the methods adopted or the result reached by the first tribunal, still the means provided by the rules of the organization for the correction of such errors must first be pursued, before recourse can be had to the courts of the state.

And if it be answered that the complaint shows that an appeal from the threatened action of the defendant to the Grand Lodge could not avail the plaintiff, because of the defendant's "bias and determined disposition" to be unfair to the end, still it surely must be an adequate and proper reply to say that the demurrer cannot be taken to admit that such a court of appeals is unable to and will not rectify any unfairness of the defendant at any stage of the case. Its disposition and ability to do so will be presumed and according to this authority must first be tested. In *Poultney* v. *Bachman*, 31 Hun, 49, (1883,) the plaintiff sued the treasurer of a lodge of Odd Fellows to recover benefits and recovered judgment in the lower court. The General Term, in reversing this judgment, say (p. 53) :—" Again there is another very important question, namely, whether the plaintiff has any right to bring this action until he has exhausted all remedies by appeal to the superior authorities of the society. * * * It may well be said that the contract, whatever it may be on the part of the lodge, includes in itself a provision for the decision by the appellate tribunals of the society of the matter in dispute. And therefore it may be argued that not until these appellate tribunals have decided against the plaintiff can he say that he has been injured. * * * Without discussing the question whether or not the decision of the highest appellate tribunal of the society is conclusive, we are of the opinion that the contract into which the plaintiff entered requires him first to seek redress within the society itself by carrying the question to the highest tribunal. For it is evident that every part of the constitution and law-

ful by-laws enter into his contract and are to be considered therewith."

It should be noticed that the rules of the order in this case as stated and referred to in the report do not *require* dissatisfied members to appeal; they only provide for and permit appeals, which the case, in common with others, treats as equivalent to a requirement.

In *Oliver* v. *Hopkins*, 144 Mass., 175, (1887,) the plaintiffs, as members of a subordinate council of the Order of United American Mechanics, sued the defendants in equity as officers of the state council to recover possession of certain property formerly belonging to the subordinate council, which had been appropriated by the state council after a decree by it annulling the charter of the subordinate council, which decree was claimed to be illegal. An appeal from this decree of the state council was allowed by the rules of the order to the national council, but no appeal had been taken. The court says :—" Until the plaintiffs have exhausted the remedies prescribed in the constitution and laws of the national council this bill in equity cannot be maintained. * * * We are of opinion that the judgment of this court cannot be invoked by the plaintiffs until they have first sought the relief for which they pray from the tribunal provided by the association to try and determine questions of this nature."

The case of *Chamberlain* v. *Lincoln*, 129 Mass., 70, (1880,) is an action of the same general character as the above, relates to property rights, and is similarly decided.

In *McAlees* v. *The Iron Hall*, 12 Central Rep., 415, (Supreme Court of Pennsylvania, 1888,) a member of the defendant order sued it for benefits without first exhausting the remedies provided by the rules of the order in that connection. The court says :—" We have often held that a member of a beneficial society must resort for the correction of an alleged wrong to the tribunals of his order, and that the judgment of such tribunals, when resulting fairly from the application of the rules of the society, is final and conclusive."

This of course means that the society remedies must be

pursued to their very end first, and that *ultimate* unfairness alone can be remedied by outside tribunals.

In a dissenting opinion in a similar case in the same court Mr. Justice GREEN and an associate say (agreeing in this particular with the majority of the court) that "it is of course the duty of the member to exhaust the remedies afforded by the constitution and by-laws of his order or association before resorting to the courts." 8 Central Rep., 220.

Actions brought by a shareholder against the officers of his corporation are in important respects akin to the cases under consideration, and in such actions it is held that he "must show to the satisfaction of the court that he has exhausted all the means within his reach to obtain within the corporation itself the redress of his grievances or action in conformity to his wishes." *Hawes* v. *Oakland*, 104 U. S. R., 450, (1881).

It ought to be added to what has already been said that respectable adjudications exist wherein it appears to be held that, even when property rights are involved, the ultimate decision of the tribunals of the order having jurisdiction not only must be sought, but when obtained is final and binding upon the party, even if "not in accordance with its by-laws or for causes that had no foundation in fact." *Schmidt* v. *Abraham Lincoln Lodge*, 84 Kentucky, 490, (1886) ; *Hall* v. *Knights of Honor*, 24 Fed. Rep., 450, (1885).

The cases above cited, together with many others in them referred to, are usually quoted as precedents for the doctrine that all remedies within the order must be first exhausted, even if property rights are involved.

If they are good law the first ground of demurrer is of course well taken. But although of great and possibly of controlling weight they are not everywhere followed.

The doctrine however, that where property rights are not threatened the remedies within the order must first be exhausted, seems to be universally accepted, (as has been already stated,) which would make the second ground of demurrer unquestionably effective. No decision to the contrary was referred to by the plaintiff.

A leading case in which the doctrine of the cases herein-before cited is questioned but the rule relied upon in the second ground of demurrer conceded, is *Bauer* v. *Sampson Lodge of Knights of Pythias*, 102 Indiana, 262, (1885,) in which the plaintiff sued for benefits. The defendant claim-ed that he should have first proceeded through its committee on appeal and grievances, which had jurisdiction to grant him the relief asked for. The court says:—" The reason-able rule is that such an organization may provide methods for redressing grievances and deciding controversies and may compel members to resort to the prescribed method of pro-cedure before invoking the power of the courts, but that it may not entirely prohibit members from suing to recover benefits accruing to them under the by-laws of the organiza-tion. Men voluntarily enter such organizations and in be-coming members subscribe to their laws, and if these laws make provision for trying controversies the member aggriev-ed must pursue the course prescribed before resorting to the courts to enforce his claims. There is no valid reason why he should not be compelled to do what he has agreed, and the harmony and efficiency of such organizations require that all measures provided and required by their by-laws should be exhausted before appealing to the courts to settle the controversy. * * * *Claims for money due by virtue of an agreement* are unlike mere matters of discipline, or questions of doctrine or of policy and are not governed by the same rules. * * * One who asserts a claim to money due upon a contract occupies an essentially different position from one who presents a question of discipline or of policy, or of doc-trine of the order or fraternity to which he belongs. All the decisions from first to last recognize a broad distinction be-tween the two classes of cases, and the one before us belongs to a class where property rights are involved and is a mem-ber of a class cognizable by the courts."

The case of *People ex rel. Rice* v. *Board of Trade of Chi-cago*, 80 Ill., 134, (1875,) a leading case in that state, seems to hold not only that, unless property rights are involved, the plaintiff must pursue his remedy within the order first,

Mead *v.* Stirling.

but also that he is *confined* to that. The question under consideration does not appear to have been decided in our own state. The general subject was incidentally referred to in *Connelly* v. *Conn. Masonic Mut. Ben. Association*, 58 Conn., 557, but none of the expressions therein used contravene the position taken in the second ground of demurrer.

To briefly recapitulate then, we have a case in which it is alleged that a superior officer in the order of masons, having jurisdiction over the subject of the removal of inferior officers, proposes to remove such an inferior officer in an irregular way and after a partial trial, from which order of removal an appeal lies by the rules of the order to a superior tribunal, and to prevent which primary removal an injunction is sought.

Upon authority and upon reason it would seem both necessary and eminently proper that the plaintiff should emerge into the domain of the state courts, if at all, from the *confines* of his order, and not *per saltum* from its midst. The diligence with which he searches in his complaint after the darkest possible colors in which to paint his impending future, would seem to indicate that in all ordinary cases he himself conceives such to be the rule, but believes that the peculiar hardships of his case justify an exception.

Right here the third ground of demurrer takes issue with him. The authorities which lay down the rule above approved do not exempt cases of exceptional hardship from it. If such an exception should be made the defendant claims that this is not such a case, and further that, to justify the extraordinary remedy prayed for herein, a case of threatened irreparable injury must be alleged, whatever the rule in other cases may be.

While it is difficult to understand how the plaintiff can possibly know what the Grand Master will eventually do, and while it is impossible to believe that the Grand Lodge cannot accord to him a fair trial upon appeal if it wishes so to do, which wish is not denied, still certain broad and definite assertions are made in that connection which to some

extent—although I think not to all—must be taken to be admitted *pro forma* by the demurrer.

Even then the defendant claims that a case of " great and irreparable mischief, where adequate relief cannot be had at law" (*Whittlesey* v. *Hartford, Prov. & Fishkill R. R. Co.*, 23 Conn., 433,) is not made out. I am also of that opinion.

The wrongful acts for the prevention of which injunctions will be granted are those which affect property or its healthful and beneficial use, and never those which affect reputation merely. The only allegations of an apprehended injury to property are that the threatened act will— (1st) " work him an irreparable injury to his * * * business ; " and (2d) " be published in masonic circles and otherwise most extensively circulated, injuring his financial credit."

As to the first, it is enough to say that an allegation of " irreparable injury " is never sufficient. " It is well established that the mere allegation of irreparable injury will not suffice to warrant an injunction, but the facts must appear on which the allegation is predicated, in order that the court may be satisfied as to the nature of the injury." High on Injunc., § 34 ; *Carlisle* v. *Stevenson*, 3 Md. Cha., 379 ; *Waldron* v. *Marsh*, 5 Cal., 119.

As to the second, it should be remarked at the outset that the allegation is argumentative and not direct, and " merely argumentative allegations or inferences from the facts stated will not suffice to meet the requirements of the rule." High on Injunc., § 34. It is nowhere alleged that the plaintiff has any credit or needs any credit or is engaged in any occupation in connection with which credit would be even convenient. That he has in fact ample credit is doubtless true. It simply is not so alleged, and therefore does not legally so appear. Clearly such allegations of apprehended injury are insufficient to bring the plaintiff within the familiar rule relative to injunctions or to take him without the rule first above considered.

If it be sought to infer the danger of substantial or ex-

ceptional damage from the earlier allegations of the complaint, it is not easy to see how the publication of the exact facts could possibly injure the plaintiff or why a garbled or untrue statement of them—the probability of which is not alleged—might not be adequately offset by a counter publication of the truth, while the knowledge that the decree of suspension had been appealed from should and doubtless would operate to suspend the judgment of those whose conclusions could ever be of weight or work an injury.

The fact that a judgment of reversal by the Grand Lodge, owing to lapse of time, could not reinstate him in his former office, affects his enjoyment of that office only, which is not one of profit.

The defendant in his argument claimed that the position and character from acting in which he was sought to be enjoined was judicial or at least quasi-judicial, and that injunctions will not be granted to restrain one so acting. This aspect of the matter is not presented by the demurrer, but was considered by the plaintiff and merits notice.

In *Gregg* v. *Mass. Medical So.*, 111 Mass., 185, (1872,) the plaintiff sought to restrain the officers and " Board of Trial " of the defendant society from trying and expelling him from its membership, whereby pecuniary injury would be inflicted upon him. The court, in the course of its opinion, says :—" Injunctions issue against parties and not against courts. And the jurisdiction in this respect has legal limits which apply to proceedings in all courts and tribunals. The general principle is that a court of chancery is not the proper tribunal to correct the errors and irregularities of inferior tribunals, and that in ordinary cases the court should not interfere. * * * The plaintiffs have cited no authority, and we have not been able to find any, which extends to a case like the present, where the inferior tribunal has jurisdiction of the subject matter and the object of the bill is to correct and restrain alleged irregularities in the pleadings and procedure or in the constitution of the body of triers. In this respect a court of chancery has no more power over the proceedings of a court of special and limited jurisdiction

Mead *v.* Stirling.

than over the proceedings of courts of general jurisdiction. They might as well issue an injunction to restrain and correct irregularities that are alleged to have occurred in the Superior Court * * * as in this case."

This case, with those therein cited, and others of a similar character which may readily be found, would seem to substantiate the defendant's claim. Whatever the remedy may be it does not seem to be by injunction against the *trier*. If it be said that in the case at bar the complainant and the trier appear to be one and the same person, it may be replied that such must often be practically the case in contempt proceedings in our state courts, where it would hardly be claimed that irregularities of procedure could be restrained by injunction.

The demurrer is sustained, and the foregoing reasons therefor by request of the defendant are ordered on file.

# RULE OF COURT.

SUPREME COURT OF ERRORS, SECOND JUDICIAL DISTRICT, JUNE T., 1893.

It is ordered by the court that the twenty-second of the Rules of Practice (58 Conn., 588) be amended, so that section first of said rule will read as follows :

Section 1. The clerk of the Supreme Court of Errors, at each term thereof, shall furnish for each judge a printed copy of every case that is to be heard at said term ; and such copy shall contain any opinion or memorandum of decision which may have been filed in said case by the judge of the trial court.

Certified by

CHARLES B. ANDREWS,

Chief Justice.