JAMES R. KIRBY POST No. 50, THE AMERICAN LEGION,
DEPARTMENT OF MASSACHUSETTS, INC., & others *vs.*
THE AMERICAN LEGION & others.

Suffolk.    November 15, 1926. — March 1, 1927.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & SANDERSON, JJ.

*The American Legion, Department of Massachusetts,* Revocation of charter
of Post.  *Corporation,* By-laws.  *Equity Jurisdiction,* To enjoin acts
of corporate officers unwarranted by charter and by-laws.  *Equity
Pleading and Practice,* Parties.

At a meeting of the executive committee of the American Legion, Depart-
ment of Massachusetts, Inc., at which eleven members were present, by
a vote of six in favor to three against, two not voting, it was voted that
the charter of a certain post be suspended until the "closing day of the
Department of Massachusetts Convention to be held . . . August 21,
22, and 23, 1924," and that "the post charter is hereby revoked with
the adoption of this order, and that the Department's action be placed
before the National Executive Committee at its first meeting, following
the receipt of this order for approval."   The constitution of the depart-
ment provided that the executive committee "shall have power to rec-
ommend to National Headquarters by a two-thirds vote of members
present at any meeting the revocation of the charter of any Post for any
violation of the Constitution or for conduct unbecoming or prejudicial
to the best interests of the American Legion."   The Post appealed to
the executive committee of the national organization, who made no
decision but remanded the case to the department executive committee
for "further action."   That committee, with the purpose after fully
hearing the defence of the Post "to sustain and uphold the existing
decision of its predecessor in authority so far as it may legally do so,"
assigned a time for hearing and notified the Post.   Before the time for a
hearing, a corporation, which the Post had organized to hold its property
for its benefit and whose corporate members were all members of the
Post, brought a suit in equity, in which four members of the unincor-
porated association, the Post, were allowed to intervene "for them-
selves and all other members of the Post," to enjoin the department
from revoking the Post's charter.  *Held,* that
    (1) The vote of the executive committee of the department was not
a "two-thirds vote of members present," and was invalid;
    (2) The mere facts, that, during the period while the controversy
over the legality of the vote was pending, the dues of some of the plain-
tiffs had not been received by the department, and that failure to pay
dues automatically resulted in suspension from membership, did not
preclude those members from their standing in the suit;

(3) The corporation held the Post's property for the Post's benefit, and the intervening petitioners on behalf of the other members of the Post were entitled to maintain the suit to enjoin action under an invalid vote which would result in the unlawful appropriation of the property of the Post;

(4) A final decree, enjoining revocation of the Post's charter, in the circumstances was proper; but it should not also enjoin the defendants "from adopting . . . as against said association or the members thereof any disciplinary measures and from taking on that account any action looking to such revocation or other measures."

BILL IN EQUITY, filed in the Superior Court on April 3, 1925, and afterwards amended, against The American Legion, incorporated by act of Congress, and the executive committee of The American Legion, Department of Massachusetts, Inc., to enjoin the defendant committee "from revoking the plaintiff's charter as a post of the American Legion by reason of failure on the part of the plaintiff to reinstate James T. Duane in its membership and from adopting as against the plaintiff any other disciplinary measures on that account or taking any action looking to such revocation or other measures."

On May 26, 1925, there was allowed "as of April 17, 1925," an intervening petition by Gilman L. Chase, John J. Moran, Oscar B. Graichen and John D. Brewster, alleging themselves to be members of The American Legion and James R. Kirby Post No. 50, having become such prior to the incorporation of said Post, and that as such members they had an interest similar to that of said Post in the subject matter of the suit and in the relief sought thereby, and praying that they be permitted to join in the suit, for themselves and all other members of said Post, as parties plaintiff. As to this petition, the master in his report stated that by an intervening petition four individual members of James R. Kirby Post No. 50 were joined as coplaintiffs alleging that they had interests similar to that of the Post and praying to be permitted to appear in behalf of themselves and of other members of the Post. The members of the corporation constituted the unincorporated body which was recognized by the Legion as a Post.

The suit was referred to a master, who filed his report on

May 9, 1925. Material facts found by the master and agreed upon by the parties are stated in the opinion.

The suit was heard upon the pleadings and the master's report by *Lawton*, J., by whose order there was entered a final decree "that the individual defendants and their successors as the officers and executive committee of the Department of Massachusetts of the American Legion be and they hereby are enjoined from revoking by reason of failure on the part of the association known as 'James R. Kirby Post No. 50, American Legion,' to reinstate James T. Duane in its membership the charter granted by the American Legion to said association as a post of said Legion and from adopting on that account as against said association or the members thereof any disciplinary measures and from taking on that account any action looking to such revocation or other measures and the defendants (including both the defendant corporation and the individual defendants) are required to recognize all the members of said association as members of said Legion in good standing and as entitled both individually and as a post to all the rights and privileges appertaining respectively to members of said Legion and to posts thereof." The defendants appealed.

*C. T. Flynn*, (*J. A. Donovan* with him,) for the defendants.

*R. G. Dodge*, for the plaintiff.

BRALEY, J. The American Legion, incorporated by an act of Congress approved September 16, 1919, 41 U. S. Sts. at Large, 284, is a national association of qualified veterans of the World War. Its organization consists of forty-eight departments, there being one department for each State. The departments, under the constitution of the Legion, are chartered by the national executive committee, and are composed of the posts within their respective areas. "Each department shall have a department commander, one or more department vice-commanders, a department adjutant, and a department executive committee. . . ." The State department consists of one or more posts. The posts are voluntary associations whose members are, by affiliation, members of the State department. "Each department may prescribe the constitution of its post [*sic*]. Post charters may be revoked

by the department executive committee with the approval of the National Executive Committee. Post charters may be suspended or cancelled as provided in the by-laws." And by § 3 of Article III of the by-laws of the Legion, "American Legion posts suffering the revocation of their charters may appeal from the decision of the department commander and the department executive committee to the National Executive Committee as hereinafter provided."

The application for a charter of certain residents of the Commonwealth who desired to organize a post having been presented to the department commander as provided by Article IX, § 1, of the constitution of the Legion, the necessary steps were taken, and a charter for a post to be known as "James R. Kirby Post No. 50" was granted. The voluntary association thus constituted was thereafter recognized as a post of the department. Its members subsequently organized the plaintiff corporation, the incorporators being identical with the members of the Post, and it acquired and owned real and personal property prior to, and during the period covered by the litigation. The association, hereinafter referred to as the Post, suspended "Past Department Commander James T. Duane," one of its members, and he appealed to the executive committee of the department.

It may be said as to parties that the original bill was brought by the Post as a corporation, which never has been recognized by the Legion. But on the petition of four members of the Post, they were allowed to intervene, and become parties plaintiff. The defendants, however, made no objection to the allowance of the petition, and did not demur to the amended bill. *Cole* v. *Wells*, 224 Mass. 504, 512. The case was referred to a master whose report, no exceptions being taken, was confirmed, and thereupon the plaintiffs were allowed to amend, to which amendment the defendants answered. The parties then agreed upon additional facts and the presiding judge on the report, the agreed facts and the pleadings entered a final decree for the plaintiffs from which the defendants appealed.

It appears from the master's report that the department executive committee ordered the Post to reinstate Duane,

and, the Post having refused to obey the order, charges in accordance with the provisions of the constitution of the Legion against the commander and other elective officers of the Post were presented to the committee. The specifications stating the grounds on which the charges were founded are, the refusal to abide by the order of reinstatement, and disobedience in failing to comply with the rule ordering promulgation of the committee's order. The Post was served with notice, and a hearing was held by the committee May 5, 1924, the Post being represented by counsel. It was voted to suspend the charter of the Post to remain in effect until the "closing day of the Department of Massachusetts Convention to be held . . . August 21, 22, and 23, 1924," and provided further, "the post charter is hereby revoked with the adoption of this order, and that the Department's action be placed before the National Executive Committee at its first meeting, following the receipt of this order for approval." The plaintiffs challenge the validity of the vote.

The constitution of the department, Article VI, § 1 (b), in so far as material, provides, that the executive committee "shall have power to recommend to National Headquarters by a two-thirds vote of members present at any meeting the revocation of the charter of any Post for any violation of the Constitution or for conduct unbecoming or prejudicial to the best interests of the American Legion." The master states, that eleven members of the committee were present, six of whom voted for the motion, three voted against it, and two did not vote. The wording of the department constitution is plain. It calls for affirmative action by two thirds of the members present to be expressed by their votes. It cannot be presumed from the silence of the two members who refrained from any expression of their will that they would have voted in the affirmative. *Maynard* v. *Board of Canvassers*, 84 Mich. 228. *People* v. *Pease*, 27 N. Y. 45, 57. *State* v. *Green*, 37 Ohio St. 227, 230. *Labouchere* v. *Earl of Wharncliffe*, 13 Ch. Div. 346. The vote of revocation was a nullity.

The Post, however, seasonably exercised its right of ap-

peal to the national executive committee as provided in Article III, § 3, of the by-laws of the Legion. The question before this committee on the appeal was whether the decision of the department committee should be affirmed, or reversed. But after taking proceedings as prescribed by the Legion by-laws, Article III, § 4, the National Committee made no decision, and remanded the case to the department committee for "further action." The department committee on March 4, 1925, gave notice to the Post that on April 9, 1925, at a place named therein they would hear and act "upon the matter of recommending to National Headquarters the revocation of the charter of said Post for conduct unbecoming or prejudicial to the best interests of the American Legion" because of its refusing to reinstate Duane. It is found by the master that it was the purpose of the department committee, after fully hearing the defence of the Post, "to sustain and uphold the existing decision of its predecessor in authority so far as it may legally do so." The master further finds that after the appeal had been "referred back to the Department of Massachusetts for further action and after the Post had been duly notified of such reference, the department officers, by communications and conferences, made efforts to secure compliance on the part of said Post with the order of the Department Executive Committee, . . . but the Post refused to do so." The proposed hearing ordered for April 9, 1925, apparently has not been held, and, the Post having exhausted the remedies given under the by-laws of the Legion, the plaintiffs brought the present suit.

If the department committee had no authority to hold the proposed meeting, and no legal vote to revoke the charter ever was passed, the final question is, whether the plaintiffs or either of them can maintain the bill. It is a general rule as the defendants contend, that a court of equity is without jurisdiction to protect by injunction mere personal rights. *Choate* v. *Logan*, 240 Mass. 131, 135, and cases cited. The charter of the plaintiff corporation declares its purpose in the words used in the preamble to the constitution of the Legion. The charter granted to the James R. Kirby Post No. 50 contains the following: "By the acceptance of this charter, the

said Post acknowledges irrevocable jurisdiction and declares itself to be in all things subject to the Constitutions of the American Legion and of the Department of Massachusetts, and the rules, regulations, orders and laws promulgated in pursuance thereof." The report states that under such conditions the plaintiff corporation "is the owner legally or equitably of real and personal property." The record does not show any other home or place of meeting of the association for any of the purposes for which it was organized and chartered. The corporation having been composed entirely of the members of the association, we assume that the legal title to the property is vested in the corporation for the benefit of the association. If the association perishes, the objects for which the corporation was formed and in support of which it has functioned would become practically obsolescent. The situation is the same as if the property was held directly by the association, instead of indirectly for its benefit.

We are of opinion that the corporation can maintain the bill. *Wolfe* v. *Limestone Council*, 233 Penn. St. 357. The individual plaintiffs for reasons previously stated were not deprived of their membership because of the department committee's action. By Article IV, § 4, of the by-laws of the Legion, "Members in arrears four months in payment of dues shall be classed as delinquent, and six months' arrearages shall automatically impose suspension from all privileges, and one year's arrearages shall automatically forfeit membership in The American Legion." But under this by-law when applied to the facts in the record the members who had failed to pay their dues were not in arrears at the date of the final decree, September 1, 1925. The individual plaintiffs also could sue in behalf of themselves, and all others having similar interests. While the better and usual practice would have been to allege that they were members of a class too numerous to mention for whom as well as for themselves the suit was brought, the interest of the class where no evidence appears to the contrary may be assumed to be the same as the interests of the plaintiffs. *Burt* v. *British Nation Life Assurance Association*, 4 DeG. & J. 158, 174.

*Williams* v. *Salmond,* 2 K. & J. 463, 468.   The fifth section of Article III of the Legion's by-laws also provides, that in cases of the revocation of the charter of a post all records and properties in its possession, as well as the charter, shall be turned over to department headquarters.   The forfeiture of the charter works a dissolution of the association and a sequestration of the furnishings and equipment required and used in its establishment and maintenance.   The plaintiffs therefore in common with all other members lose rights in personal property, the unlawful appropriation of which equity may enjoin.   See *McMahon* v. *Gray,* 150 Mass. 289, 291; *Pickard* v. *Clancy,* 225 Mass. 89, 95; *Digney* v. *Blanchard,* 229 Mass. 235, 238, 239.

The decree, however, in scope should be in conformity with the record.   It, therefore, must be modified by the omission of the words "and from adopting on that account as against said association or the members thereof any disciplinary measures and from taking on that account any action looking to such revocation or other measures"; and as thus modified it is affirmed with costs.

*Ordered accordingly.*