JESSE KENYON & others *vs.* CITY OF CHICOPEE
& others.

Hampden.    September 19, 1946. — December 9, 1946.

Present: FIELD, C.J., QUA, RONAN, WILKINS, & SPALDING, JJ.

*Equity Jurisdiction*, Personal rights, Other remedy, Criminal prosecution.
*Constitutional Law*, Freedom of speech, Freedom of the press, Police
power, Due process of law, Freedom of religion, Public place. *Way*,
Public: distribution of literature. *Municipal Corporations*, By-laws
and ordinances. *Equity Pleading and Practice*, Injunction, Demurrer,
Parties.

A city ordinance forbidding one to "distribute or cause to be distributed
or thrown, any handbills, circulars, pamphlets, advertisements or
other papers, except newspapers . . .," even if limited to public ways
and public places, was unconstitutional and void as applied to the
distribution of literature respecting religious meetings.

Equity will protect personal rights by injunction upon the same condi-
tions upon which it will so protect property rights.

The conditions of equitable relief by injunction in general are that, unless
relief is granted, a substantial right of the plaintiff will be impaired to
a material degree, that the remedy at law is inadequate, and that
injunctive relief can be applied with practical success and without
imposing an impossible burden on the court or bringing its processes
into disrepute.

Jurisdiction in equity was shown by averments of a bill brought by cer-
tain members of a religious sect against a city, its mayor, its chief of
police, its city solicitor, a clerk of a District Court and a judge thereof,
in substance that the defendants had conspired to deprive the plain-
tiffs of "their right of freedom to worship Almighty God, freedom of
speech, of press and of assembly" by enforcing a certain ordinance of
the city forbidding distribution of handbills, circulars, pamphlets and
advertising matter, although the defendants well knew that by decision
of the United States Supreme Court ordinances of that character had
been declared unconstitutional; that pursuant to such conspiracy the
defendants had unlawfully caused arrests, convictions and jailings of
the plaintiffs and threatened to continue such practices; and that the
plaintiffs had been caused, and would continue to be caused irreparable
injury unless injunctive relief were granted.

Legal remedies by defending against repeated unfounded criminal com-
plaints and by bringing successive actions for malicious prosecution or
false arrest are not adequate.

A demurrer to a bill in equity based on the general ground of want of
equity does not raise questions of form.

Equity will not hesitate to restrain prosecutions for crime where such restraint is a necessary incident of the protection of rights which equity recognizes and protects, although commonly it will leave a person accused of crime to his defence at the trial of an indictment or complaint and will not prejudge the criminal case.

A city was a proper party defendant to a suit in equity seeking relief against the prosecution by its officers of criminal proceedings against the plaintiff for alleged violation of an ordinance known to them to be unconstitutional and void.

BILL IN EQUITY, filed in the Superior Court on July 6, 1945.

Demurrers were heard by *Donnelly*, J., and were sustained.

*H. C. Covington* of New York, (*A. A. Albert* with him,) for the plaintiffs.

*W. M. Shea*, City Solicitor, for certain defendants.

*C. A. Barnes*, Attorney General, & *W. S. Kinney*, Assistant Attorney General, for certain defendants, submitted a brief.

QUA, J. This cause is here upon the appeal of the plaintiffs from a final decree dismissing the bill after the sustaining of demurrers of all the defendants. The appeal from the final decree also opens for revision here the interlocutory decrees sustaining the demurrers. G. L. (Ter. Ed.) c. 214, § 27. *Gibbons* v. *Gibbons*, 296 Mass. 89.

The ten plaintiffs are all "Jehovah's Witnesses." The defendants are the city of Chicopee, one Bourbeau, mayor of the city, one Linehan, its chief of police, one Shea, its city solicitor, one O'Connor, described as "Clerk of Courts and Attorney for the Commonwealth in the District Court of Chicopee," which we construe as meaning clerk of the District Court of Chicopee, and one Vigeant, the judge of that court.

A brief summary of allegations of the bill in so far as they need be stated is as follows: The plaintiffs and others of "Jehovah's Witnesses" made arrangements for a series of public lectures to be delivered in Chicopee in the spring of 1945 and prepared to advertise them by distributing to passers-by on the sidewalks leaflets inviting them to attend. From June 9, 1945, until the filing of the bill the defendants conspired to deprive the plaintiffs of "their right of freedom to worship Almighty God, freedom of speech, of press and

of assembly" and to stop their work by enforcing a purported ordinance of the city which after forbidding the placing of dirt, filth, or rubbish in streets or public places, further provides that no person "shall . . . distribute or cause to be distributed or thrown, any handbills, circulars, pamphlets, advertisements or other papers, except newspapers . . . ." Pursuant to said conspiracy on June 9, 1945, police officers of Chicopee, acting under the direction of the defendant Linehan, arrested two of the plaintiffs for violating the ordinance. On June 16, pursuant to said conspiracy, the defendants "caused" the arrest of one of the plaintiffs while engaged in distributing handbills on the streets. On June 23, the plaintiffs appeared on the streets to distribute handbills advertising a lecture to be given the following afternoon. Pursuant to their conspiracy the "defendants caused" the arrest of several of the plaintiffs. On each occasion of the arrest of plaintiffs the persons arrested were held in jail for several hours until bail could be obtained and afterwards were tried and found guilty, on the first two occasions by the defendant Vigeant, notwithstanding that he was shown decisions of the Supreme Court of the United States holding such an ordinance unconstitutional, and on the third occasion by a judge whose name is not stated. On each occasion fines were imposed, and the plaintiffs furnished appeal bonds.

There are further allegations that the defendants have threatened to continue and will continue false arrests, under the purported authority of the ordinance, of the plaintiffs and of any of "Jehovah's Witnesses" found distributing the described literature in Chicopee, although the defendants well know that the ordinance is unconstitutional and void; that the arrests of the plaintiffs are, and future prosecutions would be, malicious and unlawful; that such arrests are part of the conspiracy among the defendants; that the plaintiffs' means of paying bail fees and of posting bail and appeal bonds are exhausted; that the plaintiffs' activities in Chicopee have been seriously interfered with and stopped; that the defendants' acts and threatened acts have caused and will continue to cause irreparable injury to the plaintiffs unless

injunctive relief is granted; and that the plaintiffs have no adequate remedy at law. Nowhere in the bill is there any allegation that the activities of the plaintiffs involved the sale of anything or the making of a profit, or that such activities disclosed any of the attributes of a commercial enterprise, or that any property rights of the plaintiffs were infringed, unless the right to advertise by handbills in the streets free religious lectures can by some stretch be called a property right. The prayers are that the ordinance be decreed unconstitutional and void, and for injunctive relief.

There can be no question that the part of the ordinance which wholly forbids the distribution of handbills, circulars, pamphlets, and advertisements, even if limited to distribution in public ways and public places — a limitation not wholly clear from the wording of the ordinance — is unconstitutional, when applied to advertisements of religious meetings, under decisions of the Supreme Court of the United States and of this court by which every court in the Commonwealth is bound. *Schneider* v. *State*, 308 U. S. 147. *Jamison* v. *Texas*, 318 U. S. 413. *Commonwealth* v. *Anderson*, 308 Mass. 370. *Commonwealth* v. *Pascone*, 308 Mass. 591, 593–594. Compare *Valentine* v. *Chrestensen*, 316 U. S. 52.

The demurrers of the defendants O'Connor and Vigeant, unlike the demurrer of the other defendants, are grounded solely on want of equity in that the bill does not allege that any property rights of the plaintiffs are being jeopardized. We confine our consideration of the demurrers of the defendants O'Connor and Vigeant to the single cause set forth therein and do not touch any other possible objections to the bill which either of these defendants might have urged. *Lascelles* v. *Clark*, 204 Mass. 362, 372. *Shuman* v. *Gilbert*, 229 Mass. 225, 226. *Raynes* v. *Sharp*, 238 Mass. 20, 24–25. See G. L. (Ter. Ed.) c. 231, § 18; *Steffe* v. *Old Colony Railroad*, 156 Mass. 262, 263. We do not inquire whether the allegations of participation by these defendants in the alleged wrong are sufficiently concrete and specific to make out a good bill either on the ground of true conspiracy or on

the ground of joint tort. See *Fleming* v. *Dane*, 304 Mass. 46, and cases cited. Neither do we inquire whether either of these defendants could have availed himself of the doctrine of judicial immunity. See *Pratt* v. *Gardner*, 2 Cush. 63; *Raymond* v. *Bolles*, 11 Cush. 315; *Allard* v. *Estes*, 292 Mass. 187; *Andersen* v. *Bishop*, 304 Mass. 396. As to these two defendants we inquire only whether, in the precise circumstances stated in the bill in this case, relief must be denied on the sole ground that equity will not grant relief where no property right is involved. This brings us squarely to the principal question in the case, decisive as to the defendants O'Connor and Vigeant, but important also as to the other defendants, since they too demur on the ground that no property rights are in jeopardy, although they add other grounds of demurrer to which consideration must be given later in this opinion.

It is said that the formula that equity protects only property rights had its principal origin in dicta of Lord Eldon in *Gee* v. *Pritchard*, 2 Swanst. 402, decided in the year 1818. See Pound in 29 Harv. L. Rev. 640 at 642. At all events, the formula has been repeated with little or no qualification in numerous cases in many jurisdictions. Illustrative of these are *Brandreth* v. *Lance*, 8 Paige Ch. 24, *Mead* v. *Stirling*, 62 Conn. 586, 596, *People* v. *McWeeney*, 259 Ill. 161, 172, *White* v. *Pasfield*, 212 Ill. App. 73, 75, *Chappell* v. *Stewart*, 82 Md. 323, *Bank* v. *Bank*, 180 Md. 254, 262, *Hutchinson* v. *Goshorn*, 256 Penn. St. 69, 71, and *In re Sawyer*, 124 U. S. 200, 210. Many cases are collected in 14 Am. L. R. 295, 296. In this Commonwealth the same formula was approved in *Worthington* v. *Waring*, 157 Mass. 421, 423, conceded in *Choate* v. *Logan*, 240 Mass. 131, 134–135, and stated as "a general rule" in *James R. Kirby Post No. 50* v. *American Legion*, 258 Mass. 434, but was not there applied because a "sequestration" of the plaintiff's personal property in the form of furnishings and equipment was held to be involved. There are occasional dicta recognizing the rule in others of our cases. See *Kelley* v. *Board of Health of Peabody*, 248 Mass. 165, 168; *Mullholland* v. *State Racing Commission*, 295 Mass. 286, 290; *Mayor of Cambridge*

v. *Dean*, 300 Mass. 174, 175.   See, however, *Shuman* v. *Gilbert*, 229 Mass. 225, 228.

But it has long been held that the protection which equity throws over property rights is not limited to the prevention of injury to specific tangible property and includes in proper cases the prevention of unlawful interference with the plaintiff's right to carry on business in general, *Sherry* v. *Perkins*, 147 Mass. 212; *Burnham* v. *Dowd*, 217 Mass. 351, 359, and even extends to the protection of a business against constantly repeated libels or disparagement of goods. *Lawrence Trust Co.* v. *Sun-American Publishing Co.* 245 Mass. 262. *Menard* v. *Houle*, 298 Mass. 546, and cases cited.   Compare *Boston Diatite Co.* v. *Florence Manuf. Co.* 114 Mass. 69. Similarly equity has protected by injunction the right of a working man to obtain work whether or not that right is to be deemed strictly a property right. *Fairbanks* v. *McDonald*, 219 Mass. 291 (doubting *Worthington* v. *Waring, supra*). *Cornellier* v. *Haverhill Shoe Manufacturers' Association*, 221 Mass. 554, 559–560 (overruling *Worthington* v. *Waring, supra*, in so far as that decision prevents relief in equity against blacklisting by employers). In *Baker* v. *Libbie*, 210 Mass. 599, the publication of private letters was enjoined, but this was on the ground of a property right in the letters. It seems that in a proper case equity will grant relief against harassment by vexatious litigation not necessarily related to property rights.   *Steinberg* v. *McKay*, 295 Mass. 139, 143.

In reading the decisions holding or stating that equity will protect only property rights, one is struck by the absence of any convincing reasons for such a sweeping generalization. We are by no means satisfied that property rights and personal rights are always as distinct and readily separable as much of the public discussion in recent years would have them.   But in so far as the distinction exists we cannot believe that personal rights recognized by law are in general less important to the individual or less vital to society or less worthy of protection by the peculiar remedies equity can afford than are property rights.   We are impressed by the plaintiffs' suggestion that if equity would safeguard their

right to sell bananas it ought to be at least equally solicitous of their personal liberties guaranteed by the Constitution. We believe the true rule to be that equity will protect personal rights by injunction upon the same conditions upon which it will protect property rights by injunction. In general, these conditions are, that unless relief is granted a substantial right of the plaintiff will be impaired to a material degree; that the remedy at law is inadequate; and that injunctive relief can be applied with practical success and without imposing an impossible burden on the court or bringing its processes into disrepute. A number of courts have tended toward this view.[1] Legal writers support it.[2] There is no such body of authority opposed to it in this Commonwealth as to preclude its adoption here.

Doubtless there are personal rights of such delicate and intimate character that direct enforcement of them by any process of the court should never be attempted. But that is not true in this instance. Here no difficulty need be expected in administering relief by injunction. The plaintiffs' rights are of the most fundamental character. According to the bill they have been violated repeatedly. It is plain that the legal remedies by defending against repeated complaints and bringing successive actions for malicious prosecution or false arrest are not adequate. Such remedies are no more adequate than are the remedies at law for repeated injuries

---

[1] *Henley* v. *Rockett*, 243 Ala. 172.  *Stark* v. *Hamilton*, 149 Ga. 227.  *Matter of Badger*, 286 Mo. 139, 145–146.  *Itzkovitch* v. *Whitaker*, 117 La. 708.  *Foley* v. *Ham*, 102 Kans. 66, 73.  *Vanderbilt* v. *Mitchell*, 2 Buch. 910, 919.  *Brex* v. *Smith*, 104 N. J. Eq. 386.  *Binns* v. *Vitagraph Co. of America*, 210 N. Y. 51 (decided under statute).  *Flake* v. *Greensboro News Co.* 212 N. C. 780, 792. *Pierce* v. *Proprietors of Swan Point Cemetery*, 10 R. I. 227.  *Hawks* v. *Yancey*, (Tex. Civ. App.) 265 S. W. 233 (1924).  *Thompson* v. *Smith*, 155 Va. 367, 386–388.  *Mendez* v. *Westminister School District of Orange County*, 64 Fed. Sup. 544, 550–551.  Three cases presenting facts more or less similar to those in the case before us are *Committee for Industrial Organization* v. *Hague*, 25 Fed. Sup. 127, *S. C.* on appeal, *Hague* v. *Committee for Industrial Organization*, 101 Fed. (2d) 774, *Reid* v. *Brookville*, 39 Fed. Sup. 30, 32, and *Beeler* v. *Smith*, 40 Fed. Sup. 139.  See *West Virginia State Board of Education* v. *Barnette*, 319 U. S. 624; *Oney* v. *Oklahoma City*, 120 Fed. (2d) 861; *Zimmerman* v. *London*, 38 Fed. Sup. 582; *Kennedy* v. *Moscow*, 39 Fed. Sup. 26; *Donley* v. *Colorado Springs*, 40 Fed. Sup. 15; *Lynch* v. *Muskogee*, 47 Fed. Sup. 589.

[2] Pound, 29 Harv. L. Rev. 640. Chafee, 34 Harv. L. Rev. 388, 407. Robinette, 10 Can. Bar Rev. 172. Long, 33 Yale L. Jour. 115. Walsh, 7 N. Y. Univ. L. Quar. Rev. 878. Oberfell, 20 Notre Dame Lawyer, 56. Leflar, 14 Tex. L. Rev. 427, 438–439.

to business interests or repeated trespasses upon real estate or interference with easements. *Davis* v. *New England Railway Publishing Co.* 203 Mass. 470, 478–479. *Greene* v. *Mayor of Fitchburg*, 219 Mass. 121, 127. *Mueller* v. *Commissioner of Public Health*, 307 Mass. 270, 274. *Doody* v. *Spurr*, 315 Mass. 129, 134. *Carter* v. *Sullivan*, 281 Mass. 217, 224. *Terrace* v. *Thompson*, 263 U. S. 197, 214–216.

The demurrer of the defendants Bourbeau, Linehan, Shea and the city of Chicopee set up as a cause of demurrer the general ground of want of equity in addition to and apart from any question as to lack of injury to property rights. It is not plain from the bill what part each of the defendants Bourbeau, Linehan, and Shea took in bringing about the unlawful arrests of the plaintiffs, but it is alleged generally that "pursuant to their conspiracy" the "defendants" caused the arrests on two of the occasions complained of and that "defendants have threatened to continue such false arresting and wrongful prosecuting of plaintiffs," and that "defendants also threaten to continue applying" the ordinance in Chicopee. We construe these as allegations of participation by all of the defendants. A demurrer on the general ground of want of equity does not raise questions of mere form. See *Billings* v. *Mann*, 156 Mass. 203, 205; *Bliss* v. *Parks*, 175 Mass. 539, 543; *Shea* v. *Shea*, 296 Mass. 143, 147. The general allegations are therefore sufficient.

It is argued that the general ground of demurrer should be sustained for the reason that equity will not interpose to prevent prosecution in the criminal courts. It is true that commonly equity will leave a person accused of crime to his defence at the trial of the indictment or complaint and will not prejudge the criminal case. But it is settled, nevertheless, that equity will not hesitate to restrain prosecutions for crime where such restraint is a necessary incident of the protection of rights which equity recognizes and protects. *Shuman* v. *Gilbert*, 229 Mass. 225, 227–228. *New York, New Haven & Hartford Railroad* v. *Deister*, 253 Mass. 178, 180–181. *Criscuolo* v. *Department of Public Utilities*, 302 Mass. 438, 440. *Slome* v. *Chief of Police of Fitchburg*, 304

Mass. 187, 188. Compare *Commonwealth* v. *Stratton Finance Co.* 310 Mass. 469.

The demurrer of the last named defendants also specifies as a ground that the plaintiffs have a plain, adequate and complete remedy at law. We have already dealt with this contention.

The position of the defendant city of Chicopee may well be different from that of the individual defendants. It is true that the general allegations of participation in prosecuting the plaintiffs apply to the city as well as to the other defendants. But it is difficult to see how the city can be held responsible for the acts of its officers in instituting prosecutions, since in that matter commonly they are exercising governmental powers, and are not mere agents of the municipal corporation. *Buttrick* v. *Lowell*, 1 Allen, 172. *Hathaway* v. *Everett*, 205 Mass. 246. *Bolster* v. *Lawrence*, 225 Mass. 387. *Commonwealth* v. *Dowe*, 315 Mass. 217, 222–223. However, we need not now pursue this subject farther, since we think that the city's interest in the validity of its ordinance attacked by the bill is sufficient to make the city at least a proper party. As such it is not entitled to escape from the suit upon any of the grounds set forth in the demurrer. See *Watertown* v. *Mayo*, 109 Mass. 315, 319–320; *Worcester Board of Health* v. *Tupper*, 210 Mass. 378, 382–383; *Lexington* v. *Bean*, 272 Mass. 547, 554; *Mayor of Cambridge* v. *Dean*, 300 Mass. 174, 175–176; *Pitman* v. *Medford*, 312 Mass. 618, 620–621; *Adley Express Co. Inc.* v. *Darien*, 125 Conn. 501; *Adams Express Co.* v. *New York*, 232 U. S. 14; *Atlantic Coast Line Railroad* v. *Goldsboro*, 232 U. S. 548; McQuillin, Municipal Corporations (2d ed.) §§ 741, 851, 951, 2668.

It may be proper to add that at the argument of this case before us counsel for the defendants stated that the defendants had no intention of persecuting the plaintiffs or of defying the decisions of the courts by attempting to enforce an invalid ordinance. At the hearing upon the merits the plaintiffs may be unable to prove the case alleged, or it may appear that the issue has become moot or that there is no necessity for relief by injunction in order to

protect the plaintiffs' rights. But these are matters to be considered at the hearing.

*Interlocutory decrees sustaining demurrers reversed.*

*Final decree reversed with costs of appeal.*