Brady, et al. *v.* Bureau of Motor Vehicles, et al.

Argued November 3, 1971, before President Judge Bowman and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer and Rogers.

*Keith A. Clark,* with him *Shumaker, Williams & Placey,* for plaintiffs.

*Reynold J. Kosek,* Assistant Attorney General, with him *Robert W. Cunliffe,* Deputy Attorney General, and *J. Shane Creamer,* Attorney General, for defendants.

OPINION BY JUDGE KRAMER, December 29, 1971:

The instant matter comes before this Court within its original jurisdiction. The plaintiffs, five of whom are individuals and one a corporate body, filed this action in equity on their own behalf and on behalf of that class of persons similarly situated, i.e., those in the business of maintaining and operating auto wrecking lots under the "Miscellaneous Motor Vehicle Business" Provision in Section 102 of The Vehicle Code, Act of April 29, 1959, P. L. 58, as amended, 75 P.S. 102. They seek to enjoin the defendants from citing and prosecuting the plaintiffs and/or members of their class under an improper interpretation of the Vehicle Code. The defendants, officials of this Commonwealth, are those empowered with the authority over the issuance, administration and enforcement of motor vehicle license tags.

The plaintiffs aver that for many years they transported "auto hulks" on truck vehicles displaying "C license plates."[*] They aver that in November of 1970,

---

[*] The plaintiffs maintain the position that their use of a "C license plate" is proper, i.e., plates referred to by the Vehicle Code, *supra,* 75 P.S. 714, as Miscellaneous Motor Vehicle Business Registration Plates. The statute requires the payment of $50.00 for the first plate and $10.00 for each additional annual registration. The defendants argue that plaintiffs are required to procure Commercial Vehicle Registration Plates, 75 P.S. 704, at costs based upon gross weight, with a ceiling of $535.00.

a director of the Bureau of Motor Vehicles, Department of Revenue of the Commonwealth, distributed to the Pennsylvania State Police a memorandum, prepared by a Deputy Attorney General of the Commonwealth. This memorandum, based upon statutory interpretation, expressed a legal opinion that wrecking lot operators were required to use a "commercial vehicle" registration plate rather than a "C plate" in the transportation of the auto hulks and wrecked motor vehicles. This case has not reached the status wherein this Court must rule upon the validity of the legal opinion as issued by the Deputy Attorney General. The plaintiffs further aver that in reliance upon this alleged erroneous and invalid statutory interpretation, the State Police inaugurated a program of stopping the plaintiffs' loaded trucks while in transit and issuing warnings to the drivers. These warnings were in the form of a notification that such transportation operations were in violation of the license sections of the Vehicle Code. Three of the plaintiffs have in fact received citations for alleged violations. The plaintiffs allege that they are without an adequate remedy at law, and that they will be irreparably harmed if the preliminary and permanent injunctions are not issued.

On July 1, 1971, the defendants filed preliminary objections raising a question of the jurisdiction of this court on the grounds that the plaintiffs had adequate remedies at law by way of a right of appeal from summary convictions before a justice of the peace (or in the case of a conviction in the court of common pleas, to the Superior Court) or by way of the Uniform Declaratory Judgments Act of 1923, Act of June 18, 1923, P. L. 840, as amended, 12 P.S. 831 et seq. On June 22, 1971, by order of President Judge BOWMAN, this matter was set down for a hearing to be held on July 7, 1971. The matter was called for hearing on that date and the defendants' counsel called to the attention of

the hearing judge that the preliminary objections had been filed, challenging the jurisdiction of the court. Counsel for the plaintiffs stated for the record that he had received a copy of the preliminary objections five days before. At that point in time, the plaintiffs had not been given the opportunity to file a reply to the preliminary objections, and therefore they were not ripe for ruling on July 7, 1971.

In view of the fact that the matter before the court at that first hearing was whether or not a preliminary injunction should be granted, the court proceeded, without further protest from the defendants, to hear testimony. On July 8, 1971, this Court issued a preliminary injunction restraining the defendants from further prosecution of wrecking lot owners pending further order of Court. Defendants, on October 12, 1971, filed a petition to dissolve the preliminary injunction, alleging a denial of due process in that the Court had failed to rule first on the defendants' preliminary objections. This latter petition was joined with the issues raised by the preliminary objections for a consolidated argument.

The defendants are quite correct in their argument that this Court has only that jurisdiction which is granted to it by the legislature (Article V, Section 4 of the Pennsylvania Constitution). The defendants are likewise correct when they point out that one of the purposes of preliminary objections is to provide an exclusive method for raising a question of jurisdiction which shall be preliminarily determined by the court upon the pleadings as set forth in the Act of March 5, 1925, P. L. 23, Section 1, 12 P.S. 672. However, the defendants go further and argue that the court must set forth in specific language that it has jurisdiction before it can issue a preliminary injunction. In this latter regard, the defendants have erred in construing the intent and purpose of a preliminary injunction.

Rule 1531 of the Pennsylvania Rules of Civil Procedure reads as follows: "(a) A court shall issue a preliminary or special injunction only after written notice and hearing unless it appears to the satisfaction of the court that immediate and irreparable injury will be sustained before notice can be given or a hearing held, in which case the court may issue a preliminary or special injunction without a hearing or without notice. In determining whether a preliminary or special injunction should be granted and whether notice or a hearing should be required, the court may act on the basis of the averments of the pleadings or petition and may consider affidavits of parties or third persons or any other proof which the court may require." Preliminary injunctions are extraordinary remedies which the law provides to meet extraordinary circumstances wherein it appears to the court that (1) there may be irreparable harm if the preliminary injunction is not granted and (2) equity requires that the status quo be maintained until the substantive questions raised by the pleadings can be determined under the ordinary procedures. As subparagraph (a) of Rule 1531 quoted above points out, it is even possible for the court to issue a special injunction in an *ex parte* fashion. The preliminary injunction is auxiliary to the ultimate relief requested. Former Equity Rule No. 40, which preceded the Rules of Civil Procedure (Section 1531) provided that a preliminary injunction might be granted: "at any stage of the proceedings, whenever it is necessary to preserve the status quo." Under the prior Equity Rules, there was provision for "cautionary orders" which were not included within Section 1531 of the Rules of Civil Procedure. By implication, the preliminary injunction took the place of cautionary orders. The preliminary injunction is designed to provide interim protection to the plaintiff pending a determination on the merits.

Under the procedural facts of this case, it was conceivable and certainly permissible for the plaintiffs to have amended their complaint, thereby possibly removing or resolving the preliminary objections of the defendants, and so at the time of the hearing in this matter on July 7, 1971, the issues raised by the preliminary objections had not yet been struck. If the argument of the defendants was to be upheld, then the very protective purpose provided for by way of the preliminary injunction would be defeated, and any defendant could prevent the issuance of a preliminary or special injunction by the mere filing of preliminary objections.

We can find no authority, and the defendants present none, for their proposition that this Court must state in specific language that it has jurisdiction in a particular case before going on to consider the propriety of the issuance of a preliminary injunction. We therefore will dismiss the defendants' petition to dissolve the preliminary injunction.

We next turn to the issues raised by the preliminary objections.

The defendants argue that the plaintiffs had an adequate remedy at law under the Uniform Declaratory Judgments Act, *supra*. As we read that Act, a declaratory judgment is available only in instances where no other remedy is available to the plaintiffs. If there is a common law remedy, a statutory remedy or another type of action under which the issues can be resolved, recourse to the Uniform Declaratory Judgments Act is inappropriate. *See Oberts v. Blickens et al.*, 131 Pa. Superior Ct. 77, 198 A. 481 (1938) ; *Lakeland Joint School District Authority v. Scott Township School District*, 414 Pa. 449, 200 A. 2d 882 (1964). There is no merit therefore to the defendants' argument that the declaratory judgment route should have been followed by the plaintiffs in this case.

The defendants further argue that the plaintiffs had an adequate remedy at law *via* the appellate route after convictions by the minor judiciary or the criminal division of the common pleas court. There is also no merit to this argument for it overlooks a most important aspect of plaintiffs' complaint. It is obvious that if plaintiffs' interpretation of the Motor Vehicle Code is correct, any individuals charged and tried will be vindicated by the courts in a determination that the Commonwealth's interpretation is erroneous. However, such an outcome will have no effect in bringing to an end the complained of harassment. Only an equity court can provide the needed relief. To maintain that a citizen must suffer a criminal conviction before he can challenge an alleged erroneous statutory construction displays an unreasonable approach to the purpose and power of equity to protect an individual's rights.

The matters complained of by the plaintiffs are not those of a single criminal prosecution or an isolated criminal prosecution. The complaint alleges state-wide harassment by the State Police at the direction of the Department based upon what the plaintiffs allege to be an erroneous interpretation of the statute. Even though the possibility is conceded that one of the individual plaintiffs might receive an adverse judgment in criminal court and thereafter raise the basic issue of the interpretation of the Vehicle Code Section, nevertheless the allegations of constant harassment and the filing of numerous criminal actions throughout the State leads us to the conclusion that equity must take jurisdiction in this case to protect the personal and property rights of the plaintiffs.

It is well settled that equity does have jurisdiction to enjoin the police authorities from enforcing an unconstitutional or void statute. Chief Justice BELL, in the case of *Bertera's Hopewell Foodland, Inc. v. Masters,* at 428 Pa. 20, 54, 236 A. 2d 197, 220 (1967), in a

concurring opinion, stated: "In Kingsley International Pictures Corporation v. Blanc, 396 Pa., supra, the Court, quoting from Adams v. New Kensington, 357 Pa., supra, said (p. 456) : 'But equity does have jurisdiction to enjoin such a [criminal] prosecution where it is alleged not only that the statute or ordinance is unconstitutional and void but that its enforcement would cause the plaintiff irreparable loss to his property, either by effecting, if not a total suppression of his business, at least a grave interference therewith, or by subjecting him to the imposition of cumulative, exorbitant and oppressive penalties pending judicial determination of the validity of the legislation. In such cases the ground of equitable jurisdiction is the protection of property rights, and the fact that a criminal proceeding is involved is merely incidental [citing cases].' "

In *Pennsylvania Society for the Prevention of Cruelty to Animals v. Bravo Enterprises, Inc.,* 428 Pa. 350, 237 A. 2d 352 (1968), *Meadville Park Theatre Corporation v. Mook et al.,* 337 Pa. 21, 10 A. 2d 437 (1940), and *Martin v. Baldy,* 249 Pa. 253, 94 A. 1091 (1915), the Court pointed out that as a general rule an injunction should not be used to enjoin criminal proceedings. The Court, however, went on to point out that an injunction may lie where there is a direct invasion of property rights resulting in irreparable injury through the enforcement of an invalid statute. We have not yet reached the point in this case where we have had presented to the Court the full record on whether or not the statute, its interpretation or its enforcement is valid or invalid. At this point in the proceedings, accepting, as we must, all of the well pleaded averments of the plaintiffs to be true, there are sufficient allegations of harassment and irreparable injury to the personal and property rights of the plaintiffs to support a possible cause of action in equity and therefore we will overrule the preliminary objections of the defendants.

## ORDER

AND Now, this 29th day of December, 1971, after argument in open court before the court en banc (1) the motion to dissolve the preliminary injunction is denied, and it is hereby ordered that the petition be dismissed, (2) the preliminary objections of the defendants are overruled with leave granted to the defendants to file an answer within twenty days from the date of service of a copy of this order.