## Commonwealth v. Spay

*Ronald Williamson and Michael Duncan, assistant district attorneys,* for the commonwealth.
*Nicholas Nastasi,* for defendant Spay.
*Frank DiSimone,* for defendant Berenato.
*Joseph Grimes,* for defendant Jones.

SHEPPARD JR., *J.,* November 13, 1986 —This opinion is submitted in support of this court's order, dated November 7, 1986, exercising jurisdiction over this matter and enjoining the commonwealth from proceeding further with the re-arrest of these defendants in Dauphin County.

### I. ISSUE PRESENTED AND SUMMARY OF ANALYSIS

This is a case of first impression. The issue presented, although difficult to answer,[1] may be briefly stated:

---

1. Because this court is of the opinion that this matter involves a controlling question of law as to which there is substantial ground for a difference of opinion and that an immediate appeal from the pertinent order would materially advance the ultimate resolution of the matter, it has so stated in its order. See paragraph 4 of the order of November 7, 1986.

Does this court have jurisdiction to enjoin the commonwealth from re-arresting defendants in Dauphin County (pursuant to the Fraud and Abuse Control Act, 62 P.S. §1401,[2] and specifically the venue provision, 62 P.S. §1411), in an instance where the commonwealth determined initially to commence the criminal prosecution in Philadelphia County and said prosecution having been discharged following a preliminary hearing?

The answer should be in the affirmative. Under the broad jurisdictional mandate given to this court of common pleas[3] it may exercise its equity jurisdiction to enjoin a criminal prosecution where a fundamental question of constitutionality or legal right is involved. The commonwealth's attempt to re-arrest in a county other than where the initial prosecution was commenced and discharged would deprive these defendants of substantive due process, in that it would deny them their constitutionally recognized right to fundamental fairness in the criminal process.

Further, the statute pursuant to which the commonwealth purports to act is a venue provision,[4] which sets forth the proper forum for instituting the criminal action. Since penal statutes must be strictly construed,[5] and the pertinent statute does *not* provide for *re-arrest* in the second forum, to permit the commonwealth to cloak itself with such power by implication would deny these defendants basic

---

2. Act of June 13, 1967, P.L. 31, §1401, added July 10, 1980, P.L. 493, §3 effective in 60 days.

3. Pa. Const. Art. V, §5; 42 Pa.C.S. §931. See discussion at 129-131 infra.

4. 62 P.S. §1411. See discussion at 137-138, infra.

5. 1 Pa.C.S. §1928. See discussion at 137-138, infra.

fairness in the application of a criminal venue provision.

Moreover, in that the initial choice of Philadelphia County was made by the commonwealth, to now permit re-arrest and trial in a second jurisdiction would encourage forum shopping, with all its concomitant dangers.

In summary, this court had jurisdiction to issue the subject injunction.

## II. HISTORY

The three defendants, all Philadelphia County pharmacists, were arrested on December 23, 1985, on criminal complaints issuing out of Philadelphia County and charged with fraud pursuant to the Fraud Control and Abuse Act, 62 P.S. §§1401, 1407(a). Following a lengthy preliminary hearing in Philadelphia Municipal Court, the Honorable Earl J. Simmons discharged defendants on March 21, 1986.

The commonwealth on May 6, 1986, prepared to have new arrest warrants issued out of Dauphin County on the purported authority of the dual venue provision of the act, i.e., 62 P.S. §1411.[6] In response, defendants' counsel filed first a motion to quash, and later a motion to bar re-arrest in Dauphin County, with the criminal motion court of Philadelphia County (the undersigned being temporarily assigned to that court at the time). Oral argu-

---

6. 62 P.S. §1411 provides, in relevant part:

"§1411 Venue and limitations on actions.

". . . [A]ny such actions or prosecutions may be brought in any county where the offender has . . . a place of business (here Philadelphia County) or where claims . . . are processed by the commonwealth (here Dauphin County)."

ment was held on May 7, 1986, and briefs were requested.

After receiving the commonwealth's responsive brief on July 2, 1986, this court took the matter under advisement. When no decision was forthcoming, the commonwealth, without providing either this court or defendants notice of its intentions, proceeded on November 6, 1986, to cause warrants to be issued out of Dauphin County and defendants were arrested.

A hearing was held on November 7, 1986, during which this court entered the disputed order enjoining the commonwealth from proceeding further with the Dauphin County criminal proceedings, pending a resolution of the issue by the appellate courts.[7]

## III. ANALYSIS

A. *Jurisdiction*

Under the Pennsylvania Constitution[8] and 42 Pa.C.S. §931,[9] this court is given a broad jurisdictional mandate. The question is whether this broad grant of judicial power gives this court subject matter jurisdiction to act on defendants' request for an

7. Immediately following entry of this order, the commonwealth filed a petition for extraordinary relief in the nature of a writ of prohibition.

8. Pa. Const. Art. V, §5.

9. 42 Pa.C.S. §931(a) provides:

"Except where exclusive original jurisdiction of an action or proceeding is by statute or by general rule adopted pursuant to section 503 (relating to reassignment of matters) vested in another court of this commonwealth, the courts of common pleas shall have unlimited original jurisdiction of all actions and proceedings, including all actions and proceedings heretofore cognizable by law or usage in the courts of common pleas."

injunction to prevent re-arrest in Dauphin County under the unique facts involved here.[10]

The general rule is that courts of equity will not interfere in criminal matters. See e.g., *Marcus v. Diulus*, 242 Pa. Super. 151, 363 A.2d 1205 (1976). There are, however, recognized albeit rare exceptions. Courts may intervene to enjoin a criminal proceeding in cases where a multiplicity of suits would constitute reason for an exception, or *where an initial fundamental question of constitutionality or legal right is involved in the case. Martin v. Baldy,* 249 Pa. 253, 94 Atl. 1091 (1915).

Thus, Pennsylvania courts have exercised equity jurisdiction to enjoin criminal proceedings in a number of situations. In *Martin v. Baldy,* supra, the court affirmed a lower court order enjoining the state Bureau of Medical Education and Licensure from enforcing regulations governing the practice of medicine and surgery. It reached this result because those regulations improperly applied a statute governing the practice of medicine to optometrists.

While subsequent cases have stated the rule differently, *Martin v. Baldy,* supra, has been followed. In *Everett v. Harron,* 380 Pa. 123, 110 A.2d 383 (1955), the court, citing *Martin v. Baldy,* supra, with approval, stated that "while a court of equity will not ordinarily enjoin a criminal proceeding against an individual, it will assume jurisdiction where a fundamental question of legal right is involved." 380 Pa. at 129. *Cf. Meadville Park T. Corp. v. Mook,* 337 Pa. 21, 10 A.2d 437 (1940) (stating the

---

10. Procedurally, defendants could have filed an equity complaint rather than the instant motion. However, in the interest of justice and judicial economy, defendants' motion will be treated as a request for an injunction.

same rule but refusing to issue an injunction on the facts presented).

In *Brady v. Bureau of Motor Vehicles,* 4 Pa. Commw. 222 (1971), the court overruled preliminary objections to a complaint seeking an injunction against the Department of Motor Vehicles restraining it from citing and prosecuting the plaintiffs under an improper interpretation of the vehicle code. The court held that "equity does have jurisdiction to enjoin the police authorities from enforcing an unconstitutional or·void statute." 4 Pa. Commw. at 228.

Certain decisions state the rule more narrowly. Primarily, *Cooper v. McDermott,* 399 Pa. 160, 159 A.2d 486 (1960), held that equity jurisdiction lies when "the validity of the statutes under which the proceedings had begun was seriously and substantially challenged and, in addition, it was clearly apparent that irreparable damage and harm would be done to property by continuation of the prosecution." 399 Pa. at 163. However, it is settled that equity will protect personal rights as well as property rights. *Everett v. Harron,* supra; *Mazzacone v. Willing,* 246 Pa. Super. 98, 369 A.2d 829 (1977). See also *Kenyon v. City of Chicopee,* 320 Mass. 528, 70 N.E.2d 241 (1946), 175 ALR 430. It follows, then, that the prosecution may be enjoined where irreparable damage would be done to property *or* personal rights by continuation of the prosecution, there being no adequate remedy at law.

The narrow rule stated in *Cooper,* supra, does not necessarily define the outer limits of an equity court's power to enjoin criminal proceedings. Indeed, *Marcus v. Diulus,* supra, suggests by implication that there are other possible situations where equity would be justified in enjoining criminal pro-

ceedings.[11] The instant matter is one of those situations. *Kenyon v. City of Chicopee,* supra,[12]

· In this case, the harm which defendants seek to prevent is their forced appearance in another county to face criminal charges after they had previously been required, because of the prosecution's choice of forum, to defend against those charges in Philadelphia County.[13] The right that stands to be harmed is that personal and fundamental right of a citizen to basic fairness in the criminal process. As discussed in section III B of this opinion, fundamental individual rights, such as implicated here, have found protection in a variety of United States Supreme Court decisions applying principles of constitutional due process.

The instant matter, therefore, presents "an initial fundamental question of constitutionality or legal right," coupled with a serious risk of irreparable harm to personal and vital due process rights of defendants, if the commonwealth is permitted to re-

---

11. *Marcus v. Diulus,* supra, held that the lower court erred in exercising its equity jurisdiction to enjoin officers of the commonwealth from using evidence seized pursuant to a search warrant and preventing them from sending such evidence to authorities in other states. That decision is distinguishable in that the court based its decision on the fact that petitioners had an adequate remedy at law. In the instant case, petitioners have no adequate remedy at law. See note 14 at 133 infra.

12. See also 42 Am. Jur. 2d, Injunctions §§238, 239.

13. This court by no means suggests that these defendants should be shielded from both a proper re-arrest pursuant to established principles of criminal law, and the requirement to defend against well laid criminal charges. (In this regard it goes without saying that there is no question but that jeopardy has not attached). Rather, it is submitted that fundamental fairness dictates that the prosecutor effectuate such re-arrest and proceed with the charges in that forum which he initially chose to litigate.

arrest defendants in Dauphin County. Thus, the decisional requirements for equity jurisdiction are demonstrated and this court had jurisdiction to consider defendants' motion.[14]

The commonwealth's arguments to the contrary are unpersuasive. Its reliance on Cooper v. McDermott, supra, is misplaced in that Cooper is distinguishable. In Cooper the court was concerned that "the only resulting harm to the individuals under indictment will be the inconvenience, personal expense and embarrassment incident to the extradition and prosecution. This follows from and is entirely due to acts of their own making and is in no way attributable to any act . . . of the commonwealth." Cooper, 399 Pa. at 164. In the instant case, the inconvenience and personal expense that defendants will be made to incur have as their genesis the commonwealth's decision to pursue the case initially in Philadelphia County and then, after discharge in that forum, to attempt re-arrest in Dauphin County. They are not due to acts of defendant's own making. Indeed, in Cooper defendants had fled and were seeking to avoid completely prosecution. Here, the injunction both sought and issued merely obliges the commonwealth to re-arrest, and continue the prosecution in Philadelphia County.[15]

---

14. Parenthetically, it is noted that defendants have no adequate remedy at law. They could, of course, defend against the criminal charges in Dauphin County. However, the very harm complained of and that which this court believes should be obviated is that they should not be forced to go to Dauphin County to defend. Admittedly, the same objections can be raised in Dauphin County, but to require that of defendants is the very harm sought to be avoided. Indeed, because this court alone can provide the relief called for, it makes such an alternative right illusory.

15. It is not the intention to this court to impede, in any way a properly prosecuted criminal action. See note 13, supra.

Also, the decision in *Cooper* was apparently based, in part, on the out-moded concept that equity is "limited to the protection of the rights of property." *Cooper,* 399 Pa. at 163. Additionally, *Cooper* can be distinguished because the substantive due process issues inherent in the instant case go well beyond the concerns about "inconvenience and expense" raised in *Cooper.* Finally, *Cooper* did not contemplate a re-arrest pursuant to a penal, dual venue provision where application of the principle that criminal statutes must be strictly construed would arguably make the attempted re-arrest inappropriate.[16]

The commonwealth also argues that the exercise of jurisdiction by this court would violate Pa.R.Crim.P. 123, a contention which begs the question. Rule 123 in no way limits a court's power to exercise equity jurisdiction; rather, it speaks to procedures for arrest outside the judicial district where an arrest warrant was properly issued.

The commonwealth's argument that this court lacks subject matter jurisdiction because there is no prosecution extant in Philadelphia is similarly unpersuasive. The commonwealth initially chose to institute this action in Philadelphia County, and it is a municipal court decision adverse to the commonwealth that lies at the heart of defendants' motion. Indeed, jurisdiction could properly be exercised by this court even absent these facts, where the criteria discussed previously are met. A court may enjoin a criminal proceeding even before it is brought. 42 Am. Jur. 2d, Injunctions §§238-39.[17] There is no re-

---

16. See section III C of this opinion at 137-138, infra.

17. See *Zemel v. Rusk,* 381 U.S. 1, 85 S.Ct. 1271, 14 L.Ed. 2d 179 (1965).

requirement that there be a prosecution extant before subject matter jurisdiction can be exercised.

To summarize, if it is demonstrated that a fundamental question of constitutionality or legal right is presented, this court has jurisdiction to issue the injunction. This court believes the requisite criteria are met in that the fundamental questions raised are: (1) a possible denial of the basic right to fairness in the criminal process, (2) whether strictly construing the penal statute precludes the attempted re-arrest, and (3) whether the appearance of forum shopping with its accompanying dangers should preclude the prosecutor from re-arresting in Dauphin County. These matters are discussed in the ensuing sections of this opinion.

## B. *Substantive Due Process Considerations*

The re-arrest of defendants in Dauphin County under these circumstances, if permitted, would contravene the basic, individual civil right to fundamental fairness in the criminal process. It is a right that can and should be protected by a court of equity.

Our nation is built upon the recognition and protection of the fundamental constitutional rights of its citizens. These rights extend beyond those having a specific textual basis in the Constitution. This concept was discussed as early in our history as 1798, when Justice Chase in *Calder v. Bull*[18] submitted that it was the province of the judiciary to ensure that government did not violate those rights of the people derived from the natural law. Over the years the United States Supreme Court has used

---

18. 3 U.S. (3 Dall.) 386 (1798). See discussion in J. Nowak, R. Rotunda and J. Young, Constitutional Law (2d Ed. 1983) p. 426. ("Nowak").

different theories, including the concept of substantive due process under the 14th Amendment, to protect an individual's fundamental rights.[19] For example, implicit fundamental rights protected by the United States Supreme Court include freedom of association, *Bates v. City of Little Rock,* 361 U.S. 516, 80 S.Ct. 412, 4 L.Ed. 2d 480 (1960), the right to interstate travel, *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed. 2d 600 (1969), and the right to privacy, *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed. 2d 147 (1973).

The United States Supreme Court has also acknowledged basic fairness in the criminal process as a fundamental right.[20] In *Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1951), for example, the court said that "[r]egard for the requirements of the due process clause 'inescapably imposes upon this court an exercise of judgment upon the whole course of the proceedings [resulting in conviction] in order to ascertain whether they offend those canons of decency and fairness which express the notions of justice of English-speaking peoples even toward those charged with the most heinous offenses.' " 342 U.S. at 169, quoting *Malinski v. New York,* 324 U.S. 401, 416-417, 65 S.Ct. 781, 89 L.Ed. 1029 (1945).

It is this right to fairness in the criminal process that is embodied in this dispute. Although difficult

---

19. Although the United States Supreme Court has in recent years abandoned substantive due process language, it has applied a fundamental rights analysis to achieve the same result. Nowak, supra, note 18, at 457-461.

20. See e.g., *Douglas v. California,* 372 U.S. 353 (1963) (right to counsel in first appeal); *Mayer v. Chicago,* 404 U.S. 189 (1971) (right to transcript in misdemeanor appeals); *Bounds v. Smith,* 430 U.S. 817 (1977) (right to legal materials and access to courts). See also Nowak, supra, note 18 at 460.

to articulate with specificity, the subtle but telling effect of what the prosecutor proposes to do in this case offends this court's notion of decency and fairness. Our constitutions presuppose a mature people unafraid of ideas, one of which should be basic fairness in applying criminal venue provisions and re-arrest procedures.[21]

## C. Strict Construction of the Pertinent Penal Venue Provision Precludes Re-arrest in Dauphin County

The pertinent venue statute involved, 62 P.S. §1411, provides in relevant part:

"§1411. Venue and limitations on actions

"Any . . . prosecutions brought pursuant to this act for violation hereof . . . may be brought in any county where the offender has an office or place of business or where claims and payments are processed by the commonwealth. . . ."[22]

Importantly, this statute does *not* provide specifically for a *re-arrest* in the second forum, after a case is discharged in the forum where it was initially brought. Admittedly, the statute is silent on the subject of re-arrest. However, the commonwealth's intended conduct is prohibited by settled principles of statutory construction.

1 Pa.C.S. §1928 provides in relevant part:

"§1928. Rule of strict and liberal construction

---

21. The commonwealth's attempt to seek a hearing before a second court, following discharge in the initial forum, should be prohibited, too, because it amounts to "judge shopping." See discussion at 139-142, infra.

22. Here, defendants have a place of business in Philadelphia County and the claims and payments are processed in Dauphin County. Certainly, the commonwealth could have brought the initial action in Dauphin County. No one disputes that the initial decision belonged to the prosecutor.

"(b) All provisions of a statute of the classes hereafter enumerated shall be strictly construed:

"(1) Penal provisions"

It is not disputed that the act (including the venue provision under analysis) is a penal statute.[23] Indeed, certain aspects of the act arguably impose strict liability on the offender.[24]

Pennsylvania courts have consistently applied the principles of strict construction to criminal statutes. Thus, penal statutes must be strictly construed, particularly when they impose strict liability. *Commonwealth v. Ashford*, 263 Pa. Super. 100, 397 A.2d 420 (1979). Courts are to construe a criminal statute narrowly, which is to say, in favor of the accused. See e.g., *Commonwealth v. Capitolo*, 324 Pa. Super. 61, 471 A.2d 462 (1984), and the cases cited therein. It has been held that any reasonable construction of a criminal statute is favored, if it operates in favor of life and liberty, *Commonwealth v. Exler*, 243 Pa. 155, 162-63, 89 A. 968, 971 (1914), and if two inconsistent constructions of a penal statute are both reasonable, a construction favorable to the accused must be adopted. *Commonwealth v. Teada*, 235 Pa. Super. 438, 344 A.2d 682 (1975).

Application of these considerations to this statute dictates that the commonwealth should not be permitted to construe the venue provision to permit a re-arrest in the second forum.

---

23. Typically, conviction under the act results in a felony of the third degree.

24. See e.g., 62 P.S. §§1407(a)(3) through (a)(9).

D. *To Permit the Commonwealth To Re-arrest in Dauphin County Would Be To Encourage Forum Shopping.*

To permit the commonwealth to re-arrest and re-file criminal charges in Dauphin County, after the Philadelphia prosecution had been discharged, would amount to tacit approval, and indeed encouragement, of the practice of forum shopping with all its concomitant dangers for abuse. Courts should be vigilant to guard against this unwholesome practice.

Pennsylvania courts have recognized the evil of judge shopping in the context of civil matters.[25] Certainly, the dangers inherent in such a practice are more pronounced in criminal cases where the loss of liberty is possible.[26]

Other jurisdictions which have considered the propriety of a prosecutor attempting to re-file criminal charges before a second court, after those charges had been dismissed by the court where they had been first brought, have condemned, and not permitted, such a practice. E.g., *State v. Brickey*, 714 P.2d 644 (Utah 1986); *Wilson v. Garrett*, 104 Ariz. 57, 448 P.2d 857 (1969); and *Jones v. State*, 481 P.2d 169 (Okla. App. 1971).

In *State v. Brickey,* supra, the Utah court framed the issue thusly:

---

25. See e.g., *Municipal Publications Inc. v. Court of Common Pleas of Philadelphia County,* 507 Pa. 194, 489 A.2d 1286 (1985), where the court stated that "[j]udge shopping has been universally condemned and will not be tolerated at any stage of the proceedings," 489 A.2d at 1289.

26. The prospect of "judge shopping" in a criminal case context was alluded to with disapproval in *Commonwealth v. Schab,* 477 Pa. 55, 383 A.2d 819 (1978).

"The issue raised is one of first impression in Utah: What are the limits on the state's ability to refile criminal charges when those charges have been previously dismissed for insufficient evidence?" 714 P.2d at 646.

It is submitted that the following comments of the Utah Supreme Court are both instructive and applicable to the matter at hand:

"The fact that a subsequent prosecution is not barred by the double jeopardy clause does not mean, however, that the state is free to re-file criminal charges under all circumstances. For if this were the case, the state could easily harass defendants by re-filing criminal charges which had previously been dismissed for insufficient evidence. Considerations of fundamental fairness preclude vesting the state with such unbridled discretion. See *Jones v. State,* 481 P.2d 169, 171 (Okla. Crim. App. 1971); *Stockwell v. State,* 98 Idaho 797, 573 P.2d 116, 138-39 (1977); *People v. Walls,* 117 Mich. App. 691, 324 N.W.2d 136, 138 (1982).

"The state vigorously argues that an accused will be protected from harassment by the good faith of the prosecutor. However, the courts have had occasion to scrutinize the exercise of the broad discretion accorded prosecutors, and that scrutiny has revealed that the prosecutor's good faith is a fragile protection for the accused. Numerous courts have noted the potential for abuse inherent in the power to re-file criminal charges. See *Holmes v. District Court,* Colo., 668 P.2d 11, 15 (1983), citing *People v. Freiman,* Colo., 657 P.2d 452, 453 (1983); *Wittke v. State,* 80 Wis.2d 332, 259 N.W.2d 515, 520 (1977); *Nicodemus v. District Court,* 473 P.2d 312, 316 (Okla. Crim. App. 1970); *Wilson v. Garrett,* 104 Ariz. 57, 448 P.2d 857, 859 (1969); *Stockwell v.*

*State,* 573 P.2d at 138. 714 P.2d at 646-47. (footnote omitted)."

After concluding that the prosecutor was forum-shopping simply because he disagreed with the decision of the judge who presided at the first preliminary hearing, the court noted:

"To curb such abusive practices, many states have limited prosecutorial discretion to re-file charges. Some states have enacted statutes or court rules to limit discretion either through judicial oversight mechanisms or by prohibiting re-filing without new or additional evidence, while others have acted through court decisions." 714 P.2d at 647.

In *Wilson v. Garrett,* supra, a writ of prohibition was issued to prevent the prosecutor from continuing a criminal action in a second district after a prior district (where the prosecutor initially brought the action) had dismissed the criminal complaint. The Arizona court took the position that "[a] criminal prosecution must not be shuttled from one magistrate to another simply because a county attorney is not satisfied with the action of the magistrate in the precinct whose jurisdiction was first invoked." 104 Ariz. at 58, 448 P.2d at 858. It was conceded that the prosecuting attorney was not foreclosed from proceeding in the same jurisdiction, but the court concluded that the prosecution should be confined to that jurisdiction of first choice.[27]

In *Jones v. State,* supra, the Oklahoma court found unacceptable the shopping for a second magistrate in a case where a prior magistrate had discharged the case. That court recognized the consti-

---

27. The court was interpreting an Arizona statute which conferred concurrent jurisdiction on two courts. The same rationale can be applied to an interpretation of the statute considered in this case, 62 P.S. §1411, which provides for concurrent venue in two counties.

tutional implications of forum shopping, and found that "such a practice can become a form of harassment which may violate the principle of fundamental due process and equal protection of the law . . .", quoting *Nicodemus v. District Court*, 473 P.2d 312 (Okla. Crim. App. 1970).

Defendants stress the inconvenience and expense of being compelled to defend again in a second forum geographically removed from the county both of residence and where, because of the prosecutor's choice, the initial hearing was conducted. Although this is a consideration,[28] it is not the primary concern in the view of the undersigned. Rather, it is the appearance of "judge shopping" that leads this court to conclude that the commonwealth should not be permitted to re-arrest and re-file criminal charges in Dauphin County.

## IV. CONCLUSION

It was based on the foregoing rationale that the order of November 7, 1986, was entered.[29] Similarly, for the above reasons, this court had juris-

---

28. Pennsylvania cases analyzing issues of collateral estoppel and res judicata have commented on such considerations and have also discussed the importance of avoiding harassment in criminal proceedings. See e.g. *Commonwealth v. Lagana*, 334 Pa. Super. 100, 482 A.2d 1101 (1984) rev'd 510 Pa. 477, 509 A.2d 863 (1986). The risk of harassment in criminal proceedings is great "because of the disparity usually prevailing in resources between the state and the defendant and the strain of a second prosecution even if not for identical offense." *United States ex. rel. DiGiorgiemo v. Regan*, 528 F.2d 1262 (2nd Cir. 1975), cert. denied, 496 U.S. 950, 96 S.Ct. 372, 49 L.Ed. 2d 1187 (1976). See also Mayers and Yarbrough, Bis Vexari: New Trials and Successive Prosecutions, 74 Harv. L. Rev. 1, 31 (1960).

29. This court reiterates that it does not intend, in any way, to preclude the commonwealth from 're-arresting and

diction and acted properly in granting the injunction.

## ORDER

And now, this November 7, 1986, upon consideration of defendants' motion to bar re-arrest and the commonwealth's motion to dismiss defendants' motion, the respective briefs filed in support of those motions, and all other matters of record, and taking into account that there are no material facts in dispute, and it appearing that the commonwealth has commenced re-arrest proceedings in and through Dauphin County, it is hereby ordered:

(1) That this court exercises subject matter jurisdiction over this controversy.

(2) That the commonwealth is enjoined from proceeding further with the re-arrest of these defendants in and through Dauphin County.

(3) That the commonwealth is permitted to commence and effectuate re-arrest of these defendants in Philadelphia County only.

(4) That this court is of the opinion that this order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from this order may materially advance the ultimate termination of this matter.

(5) That all parties are to be served, through their counsel, with a true copy of this order immediately upon its filing.

---

continuing the prosecution in Philadelphia County (where the commonwealth initially chose to commence the prosecution). See notes 13 and 15, supra.